**Jacqueline L. MADDOX,**
**Plaintiff-Appellee,**

v.

**GRANDVIEW CARE CENTER, INC.,**
**Defendant-Appellant.**

**No. 85-8446**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 24, 1986.

Clifford H. Nelson, Jr., Atlanta, Ga., for defendant-appellant.

Janet E. Hill, Jeanne M.L. Player, Athens, Ga., for plaintiff-appellee.

Before TJOFLAT, VANCE and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

Jacqueline L. Maddox alleges that her employer Grandview Care Center, Inc. ("Grandview"), through its leave of absence policy, forced her to resign from her job as a nursing assistant on account of her pregnancy. Maddox argues that Grandview's leave policy in force at the time of her resignation violated Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k). She seeks a declaratory judgment, a permanent injunction against implementation of the policy, award of damages, and reinstatement to her former position. After a two-day nonjury trial, the district court found that Maddox was terminated because of a facially discriminatory leave policy in violation of Title VII and ordered that she be reinstated to her former position and that appropriate damages be awarded. We affirm.

## I. Background

Maddox was employed from December 22, 1981, until December 6, 1982, as a nurse's assistant at a nursing home operated by Grandview in Athens, Georgia. She received favorable performance reviews during her period of employment. In the fall of 1982, Maddox learned that she was pregnant and experienced some health problems related to her pregnancy which required her to stay home from work on a few occasions. Maddox also had a medical history of difficulties during an earlier pregnancy that had resulted in a premature delivery and death of the infant.

Grandview's policy concerning the length of leaves of absences for its employees at that time [1] was as follows:

> Maternity leave is limited to three months per employee; educational leave is limited to the length of the course of study; and military leave is limited to length of tour of duty. Leave-of-absence for illness may be granted on a doctor's recommendation and with the administrator's approval....

All leaves of absences were without pay.

In November of 1982, Maddox informed her supervisor that she was pregnant. After taking a one-week sick leave on the advice of her doctor, Maddox was further advised by her doctor to abstain from performing any strenuous work. Maddox submitted a written statement from her doctor to this effect, to her supervisor, William Edwards, and requested a six month leave of absence without pay to begin immediately.[2] Edwards informed Maddox that the company policy limited maternity leave to three months and that all leaves of absence had to be approved by the administrator, Betty Williamson, who had temporarily left town without delegating to anyone the authority to act on such a request in her stead. Maddox filed a written request for a six month leave on November 30th and did not return to work during the next three days due to complications arising out of her pregnancy. On December 6, 1982, Maddox was called into work and told that she either had to resign or she would be fired for having violated another company policy which stated that an employee was subject to termination for failing to report to work for three days without calling in.

---

1. Grandview subsequently has amended its written leave of absence policy.

2. Maddox asserts that prior to her request for a six month leave, she had asked Edwards if she could work on a part-time basis. She states that on November 24, 1982, she left a note for Edwards from her doctor advising her to switch to part-time work. She states that she spoke with Edwards about it again because she had heard that a part-time position had recently opened up but that Edwards told her that there was no part-time position available. The parties stipulated to the fact that there was a part-time position available, but Edwards denies ever having received the November 24th note or ever having discussed part-time work with Maddox. Although Maddox's allegations, if found to be true, would constitute a significant factor in establishing a prima facie case, the district court was persuaded that unlawful discrimination had occurred before reaching these disputed facts. We affirm the district court's finding of unlawful discrimination based on the findings in its opinion. Our review of the record in its entirety, including the facts still in dispute, does not persuade us that the finding is clearly erroneous.

Although standard company policy was to act upon leave requests the following day, Maddox's request was never acted upon. Maddox resigned.

Maddox filed a charge of discrimination against Grandview with the EEOC on January 14, 1983. The EEOC investigated the charge and issued a determination on June 29, 1983, finding reasonable cause to believe that the charge was true. Maddox then filed a complaint in federal district court on August 1, 1983, alleging that Grandview had engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978. Following a period of discovery, the district court, in November, 1984, held a two day nonjury trial at which Maddox, Williamson, and Edwards, among others, testified. The district court found that Grandview's leave of absence policy was discriminatory on its face and constituted direct evidence of discrimination violative of Title VII. The court ordered Grandview to reinstate Maddox and denied Grandview's motion to stay the order pending appeal. Grandview reinstated Maddox on June 14, 1985.

## II. The Applicable Legal Standards

### A. *The Statutory Standard in the District Courts*

Grandview Care Center, Inc., as an operator of nursing homes and an employer of between sixty and sixty-five individuals on a year-round basis, is an industry affecting commerce which qualifies as an "employer" under 42 U.S.C. § 2000e(b) and is thereby subject to the antidiscrimination provisions of Title VII. Maddox's claim clearly comes within the purview of Title VII: she meets the statutory definition of employee in section 2000e(f), her claim involves her discharge which is an aspect of employment cognizable under section 2000e(a)(1), and she alleges discrimination on the basis of her pregnancy which is a protected classification under the statute as amended. The statute specifies that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to do work...." 42 U.S.C. § 2000e(k). Although this provision, known as the Pregnancy Discrimination Act of 1978 (PDA), was not included in the original statute,[3] this court has recognized that claims brought under the PDA should be resolved using the same analysis employed in other Title VII sex discrimination cases. *Hayes v. Shelby Memorial Hospital,* 726 F.2d 1543, 1547 (11th Cir.1984).

In order to prevail on a claim of disparate treatment under Title VII as Maddox alleges,[4] a plaintiff must prove that her employer unlawfully discriminated against her because of her protected classification. There are several methods by which a plaintiff can achieve this. In *Hayes v. Shelby Memorial Hospital,* 726 F.2d 1543

---

**3.** The subsection was added to Title VII in 1978 by Pub.L. No. 95–555, 92 Stat. 2076. By enacting this amendment, Congress legislatively overruled the decisions in *Nashville Gas Co. v. Satty,* 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977), and *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), to the extent that they had held that pregnancy was a legitimate, nondiscriminatory basis for differential treatment. The amendment became effective on October 31, 1978, and was therefore in force at all times relevant to Maddox's claim.

**4.** An individual can also establish a case of unlawful discrimination under Title VII under a theory of adverse impact by showing that a concededly neutral employment practice which has a disparate impact on a protected group is not justified by business necessity. *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Since the district court did not address the applicability of this approach to Maddox's case, we find it unnecessary to reach the issue and treat her case as one of disparate treatment. See *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 1481 n. 1, 75 L.Ed.2d 403 (1983) (recognizing practice of distinguishing between disparate treatment and disparate impact cases); *Hayes v. Shelby Memorial Hospital,* 726 F.2d 1543, 1547 (11th Cir.1984) (setting forth the different analyses applicable to a violation of the PDA as a disparate treatment case and a disparate impact case).

(11th Cir.1984), this court provided a concise framework for the pursuit of claims under the most prevalent theories. Under the "pretext theory," a plaintiff must establish a prima facie case, which gives rise to a rebuttable presumption of unlawful discrimination. Much has been written concerning what constitutes a prima facie case of discrimination under Title VII. The Supreme Court first drew a blueprint for establishing a prima facie case of disparate treatment in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and further refined the procedures in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A defendant can then rebut this presumption by articulating a "legitimate, nondiscriminatory reason" for its actions. In order for the plaintiff to prevail, she must persuade the factfinder that the proffered reason is a pretext for discrimination. Under the "facial discrimination" theory, the plaintiff establishes a presumption that the case is one of facial discrimination by showing that the "policy by its terms applies only to women or pregnant women." *Hayes*, 726 F.2d at 1548. The employer can rebut this presumption by showing that in spite of its appearance of differential treatment, the policy is neutral in that it equally affects all employees or that it is a bona fide occupational qualification.

Although these theories provide a framework under which the burdens of persuasion and production can be neatly delegated to the relevant parties, they will not fit every case and were never meant to obscure the fact that the ultimate finding is whether unlawful discrimination occurred. The Supreme Court has explained that

> when the defendant fails to persuade the district court to dismiss the action for lack of a *prima facie* case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the fact finder must then decide whether the rejection was discriminatory within the meaning of Title VII.

*United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (footnote omitted). At this point, the court should no longer concentrate on deciding whether or not the plaintiff did in fact establish a prima facie case. Simply stated, the district court must decide whether the employer treated the plaintiff differently based on a reason prohibited by Title VII. The plaintiff still bears the burden of persuading the court of the unlawful discrimination and may succeed " 'directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.' " *Id.* 103 S.Ct. at 1482 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095).

### B. The Standard of Review in the Appellate Courts

Our role as a court of appeals is to review the district court's determination of the factual question of unlawful discrimination under Fed.R.Civ.P. 52(a) and decide whether its finding is clearly erroneous. *Pullman-Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). The Supreme Court recently restated the principles underlying the clearly erroneous standard of review and noted that " [w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, — U.S. —, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). We must review the district court's finding of unlawful discrimination in the instant case in light of the record viewed in its entirety with proper deference given to the trier of fact. *Id.* 105 S.Ct. at 1512.

### III. The District Court's Finding of Unlawful Discrimination

The district court rested its finding of unlawful discrimination primarily on its finding that Grandview's leave of absence policy, as it existed in December of 1982, was facially discriminatory. Grandview asserted, however, that the policy was not discriminatory on its face because a pregnant employee could obtain a three month

leave of absence on the mere showing that she was pregnant and that a request for a longer leave of absence was possible under the regular leave for illness policy. The court rejected Grandview's argument, noting that the written policy "expressly stated '[m]aternity leave is *limited* to three months per employee' (emphasis added), while a leave of absence for 'illness' could be granted for an indefinite duration." The district court further supported its finding with the following facts: 1) neither Williamson nor Edwards could point to an instance in which such a combination of leaves had been given to an employee; and 2) Edwards did not provide Maddox with information of any such possibility of an extended leave when he explained the policy to her on November 30th but rather stated that maternity leave was limited to three months. The district court specifically held that Grandview's contention that the policy was not facially discriminatory was "not credible in light of the actual application of those policies." Grandview did not argue any bona fide occupational qualification defense and we find that such analysis would be inapplicable to this case. Considering the record in its entirety, including Williamson's responses to the EEOC which were made part of the record at trial, the district court's finding is not clearly erroneous.

Grandview also attempted to rebut the presumption of unlawful discrimination by asserting that Maddox's termination was based on her failure to comply with Grandview's legitimate, nondiscriminatory policy of dismissing employees who are absent for three days without calling in to notify the supervisor of their absence and the cause for it. The district court reasoned that because of the direct evidence of discrimination presented by Maddox, Grandview had to prove that the same decision to terminate Maddox would have been made absent the discriminatory leave policy. *See Lee v. Russell County Board of Education*, 684 F.2d 769, 774 (11th Cir. 1982). The court rejected Grandview's argument, however, finding that Maddox had in fact advised Edwards that she would not

return to work after November 30th and that Edwards therefore knew that Maddox would be absent on the three days in question. It further found that "without the invalid leave policy limiting maternity leave to three months, plaintiff would have been granted a leave of absence for the duration of her pregnancy, just as any male employee would have received a leave of equal duration upon presentation of similarly compelling medical evidence." Alternatively, the district court held that even if there were not direct evidence of discrimination, it "would not hesitate to find" that Maddox had satisfied her burden of persuasion by establishing that Grandview's reason was a mere pretext. In light of the record as a whole, these findings are not clearly erroneous. We agree with the district court that this case presents the type of discrimination which Congress intended the PDA to eradicate.

We AFFIRM the district court and REMAND for the determination of damages.