UNITED STATES of America, Plaintiff,

v.

BOARD OF EDUCATION OF the CONSOLIDATED HIGH SCHOOL DISTRICT 230, PALOS HILLS, ILLINOIS; and Illinois Education Association, Consolidated High School District 230 Teachers' Association, Defendants.

No. 88 C 3113.

United States District Court, N.D. Illinois, E.D.

Sept. 6, 1990.

See also 761 F.Supp. 519.

Gail C. Ginsberg, U.S. Atty.'s Office, Chicago, Ill., for the U.S.

Gary Kostow, Diane M. Baron, Jeanette Marie Bourey, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, Ill., for Board of Educ. of Consol. High School Dist. 230.

Gregory John Malovance, Winston & Strawn, Jane Clark Casey, Chicago, Ill., for Illinois Educ. Ass'n.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LEINENWEBER, District Judge.

### INTRODUCTION

The United States brought this action against the Board of Education of the Consolidated High School District 230 ("District 230") and the Illinois Education Association, Consolidated High School District 230 Teachers' Association ("Association") contending that the leave provisions of the collective bargaining agreements ("CBA") of defendants and the leave policies of District 230 constituted a pattern or practice of discrimination against pregnant teachers in violation of Title VII as amended by the Pregnancy Discrimination Act ("PDA"). 42 U.S.C. §§ 2000e–2(a) and 2000e(k).

### FINDINGS OF FACT

1. This case originated from a timely charge brought by a District 230 teacher, Sharon Carlson, before the Equal Employment Opportunity Commission ("EEOC") on June 25, 1984, complaining that District 230's leave policies discriminated on the basis of sex. The EEOC subsequently issued a reasonable cause determination, and because the challenged practices and policies affected other female teachers referred the matter to the Department of Justice, which brought this pattern or practice case.

2. The gist of the United States' complaint is the CBA provisions and the practices of District 230 prohibiting pregnant teachers from taking sick leave for pregnancy-related disability and then taking maternity leave at the expiration of the sick leave, and the CBA provision excluding maternity benefits from the sick leave bank ("SLB"), violate Title VII.

3. The relevant CBAs cover the years 1982 through June 1, 1987. The complained-of provisions were eliminated on the latter date.

4. During the relevant time period maternity leave policy as established by the CBA provided, *inter alia,* the following: "A teacher shall not be required to resign or take a leave of absence because of pregnancy. Said teacher, however, may in writing, request a leave of absence without pay. *A maternity leave of absence may begin when the pregnant teacher desires, but not later than when she is unable to perform her duties satisfactorily.* A maternity leave of absence for a period longer that one semester shall end on the day prior to the beginning of any school year up to and including five school semesters after the maternity leave of absence begins." (§ 6.042 CBA) (emphasis supplied)

Under this subsection, maternity leave may begin whenever a pregnant teacher chooses, but must begin not later than the date when the teacher actually becomes disabled due to her pregnancy or because of childbirth. Her maternity leave need not end when her medical disability ceases, and may extend for a period up to five semesters.

5. The relevant provisions of the CBA for use of sick leave by a pregnant teacher were as follows:

"A teacher *not requesting maternity leave* may utilize accumulative sick leave under the following conditions:

"(1) A pregnant teacher shall notify her principal in writing when her pregnancy is confirmed in order to be eligible to utilize her accumulated sick leave.

(2) Such accumulated sick leave shall be allowed during the time period that the teacher's physician determines, in writing, that she is unable to perform her teaching duties as a result of the pregnancy or delivery of the child. The teacher shall submit periodic statements from her physician attesting to the condition of her health. If a teacher shall have exhausted her accumulated sick leave prior to her ability to return to work, she will be granted an unpaid leave of absence for such period.

(3) Failure of the teacher to return after her physician determines she is medically able to perform her teaching duties shall be considered as having waived all rights to continued employment in the District." (§ 6.0158 CBA)

A pregnant teacher therefore who requested to use sick leave for her pregnancy disability could not take maternity leave and vice versa. A pregnant teacher who took sick leave in lieu of maternity leave was required, as was the case with any teacher who took sick leave for any other illness or condition, to return to her teaching position as soon as her medical (pregnancy) disability ceased.

A pregnant teacher who elected to take maternity leave instead of sick leave could however use accumulated paid sick leave for any non-maternity related disability.

6. At all times relevant, the CBA contained a provision for parental leave. It was worded as follows:

"A teacher may request a parental leave of absence without pay to rear his children. A teacher who adopts a child may request a parental leave of absence without pay to rear his/her adopted child. A teacher on maternity or parental leave shall not accept employment outside his/her home during the hours he/she otherwise would be teaching, except to be employed as a substitute for District 230, or except where the teacher is denied her initial request that her maternity leave of absence should end on the day prior to the beginning of a school semester. A teacher who requests a parental leave of absence shall follow the procedures, where applicable, in this Section 6.04." (Section 6.045 CBA)

District 230 and the union agreed that the use of the masculine pronoun "his" in the first sentence of Section 6.045 was a misprint and this paragraph should be read to make parental leave available to natural mothers. While there is evidence that some of the faculty read the provision literally to deny parental leave to natural mothers, District 230 did grant Mary Parkhurst, a natural mother, a parental leave. There was no evidence that District 230 ever de-

nied a natural mother parental leave. Therefore, the court finds that at all relevant times parental leave was, in fact, available to natural mothers as well as natural fathers and adoptive parents.

7. The CBA provides a host of other forms of leave, of which most are minor. The other major leaves are teaching leaves (§§ 6.05 and 6.06) and educational leave (§ 6.07). The CBA also recognizes military leave but this leave is governed by federal law.

8. Although all of the leaves appear to be discretionary with District 230, in practice, maternity leave has never been denied to a pregnant teacher. The administrator of the leave policy, Dr. Karen Moriarty ("Moriarty"), interpreted the CBAs as making maternity leave an entitlement to a pregnant teacher. District 230 has a policy of permitting discretionary major leaves only on a semester basis, and leave of an entire school year is preferred. This policy is dictated by District 230's belief that it is able to hire better quality certified teachers as replacements at the beginning of the school year. This policy of leave beginning at the start of the school year does not apply to maternity leave, which commences at any time a pregnant teacher desires.

9. All forms of leave (including paternity leave) other than maternity, allow a teacher to take paid sick leave for illnesses occurring prior to the time the actual leave commences. The professed reason that the CBA denied sick leave to a pregnant teacher who had opted for maternity leave was its policy against taking two different leaves at the same time. If the teacher was disabled due to pregnancy her maternity leave automatically commenced, thus taking sick leave at the same time would be "double dipping." In fact, the CBA specifically denies the use of sick leave by any teacher while that teacher is on any other leave.

10. District 230's current leave policy embodied in Section 6.04 of the 1987–1990 CBA allows a pregnant teacher to use accumulated sick leave prior to taking maternity leave.

11. A SLB was first established in the 1980–1982 CBA. Subsection 6.015 of the 1982–1984, 1984–1986, and 1987–1990 CBAs provided that:

> "Withdrawals from the sick leave bank shall be available only for a teacher's *prolonged and extended catastrophic illness* and *shall not be available for maternity benefits, elective surgery*, illness of family or household members, and/or death of family or household members." (emphasis supplied)

SLB use requires a medical verification of disability and must be approved by District 230. Moriarty recommends approval or disapproval to the District 230. It has never failed to follow her recommendation. Although no pregnant teacher has ever requested use of SLB, Moriarty testified that she would recommend that District 230 approve SLB use if a pregnant teacher had a pregnancy complication. Moriarty considered only "normal" pregnancy to be excluded.

Neither District 230 nor Moriarty have a written definition of what is meant by the term "catastrophic illness." It is considered on a case-by-case basis. For example, use of the SLB has been approved by District 230 for a variety of medical conditions causing disability, including terminal cancer, cholecystectomy, cyst drainage, cervical radiculopathy, lumbar radiculopathy, laminectomy, and a broken leg.

Pregnancy is the only non-elective medical condition resulting in disability that is specifically excluded from the SLB use.

## CONCLUSIONS OF LAW

1. Title VII the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, provides that it shall be an unlawful employment practice for an employer to:

> "(1) fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin."

42 U.S.C. § 2000e–2(a).

2. The PDA, enacted by Congress in 1978 as an amendment to Title VII, defines

all discrimination on the basis of "pregnancy, childbirth or related medical conditions" as discrimination on the basis of sex. P.L. 95–555, 92 Stat. 2076 (1978). Specifically, Congress added Section 701(k) to Title VII, which provides, in relevant part, that:

> "The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth or related medical conditions; and women affected by pregnancy, childbirth or related medical conditions should be treated the same for all employment-related purposes, including the receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in this section 703(h) of this title shall be interpreted to permit otherwise."

42 U.S.C. § 2000e(k).

3. District 230 is an employer within the meaning of 42 U.S.C. § 2000e(b).

4. Defendant Association is a labor organization within the meaning of 42 U.S.C. § 2000e(d) and (e).

■ 5. The PDA provides no substantive rule to govern pregnancy discrimination. Rather, its prohibition is invoked through the substantive provisions of Title VII. Title VII prohibits, *inter alia,* disparate treatment-intentional discrimination treatment based on impermissible criteria. *Scherr v. Woodland School Community Consolidated Dist. No. 50,* 867 F.2d 974, 978–79 (7th Cir.1988). Claims brought pursuant to the PDA are analyzed in the same manner as any other Title VII claim. *Maddox v. Grandview Care Center, Inc.,* 780 F.2d 987, 989 (11th Cir.1986). In a disparate treatment case such as this, a plaintiff must make a *prima facie* showing that similarly situated employees were not treated equally. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ 6. The thrust of the Government's argument concerning sick leave and maternity leave is that the CBA permitted a teacher to take sick leave in conjunction with any leave other than maternity leave, and, unlike the Leyden School District described in *Scherr,* leaves other than maternity were often permitted to begin and end at times other than with the commencement and end of a school year. *See Scherr,* 867 F.2d at 983. Therefore, this court ought to treat District 230 in the same way the Seventh Circuit treated Woodland School District, that is, to find it in violation of Title VII.

However, there is a critical difference between the District 230 CBA and the Woodland CBA. Here, the District 230 CBA permits a pregnant teacher to take sick leave for disability up to and including birth disability and then take parental leave for the period after birth. Thus a pregnant teacher under the District 230 CBA has precisely the same rights to take sick leave and parental leave as a non-pregnant teacher, but one additional right: a pregnant teacher has the option open to her to take maternity leave in lieu of sick leave and paternal leave, an option not available to non-pregnant teachers. She may take maternity leave as a matter of right at any time after she becomes pregnant and remain on leave for up to five semesters. Thus, unlike the case with Woodland School District, *Cf. id.* at 982, maternity leave here is truly a "gratuitous 'extra option'", since maternity leave is unavailable to non-pregnant teachers, and, unlike Woodland, a pregnant teacher may take parental leave in conjunction with sick leave. Thus, all teachers, pregnant and non-pregnant, may combine the two types of leave. It is only if a pregnant teacher wants to avail herself of a benefit not available to non-pregnant teachers, i.e., a non-discretionary leave commencing when she wishes, and of substantially longer duration, does she give up her right to use sick leave for her pregnancy. Accordingly, the court finds that the sick leave and maternity leave provisions of the CBA do not violate Title VII and therefore the government has failed to prove a pattern or practice of discrimination on the part of District 230 with respect to its leave policies.

■ 7. On the other hand, the court does find that District 230 has engaged in a pattern or practice of sex discrimination in

violation of Title VII in the implementation and maintenance of its SLB policies established in the CBA against pregnant women who opt for use of accumulated sick leave for their pregnancy. The court has found that District 230 almost never refused to grant use of the SLB for any disabling condition that required hospitalization. District 230 has adopted no definition of "catastrophic" and has allowed SLB use for such minor disabling conditions as back strain, requiring hospitalization for traction, and gall bladder surgery. The only medically disabling conditions expressly excluded from the SLB are maternity and those conditions involving elective surgery. All other ailments and medical conditions causing disability are at least eligible for District 230 consideration. Maternity in no sense can be considered to be "elective" in the same sense as "elective" surgery. Accordingly, the CBA SLB provisions, by automatically excluding maternity benefits, discriminate against pregnant teachers who elected to utilize accumulated sick leave for their pregnancy-related disability. The court holds therefore that District 230 has engaged in a pattern or practice of sex discrimination against pregnant women in the implementation and maintenance of its SLB policies in violation of Title VII.

IT IS SO ORDERED.