Jane BUSH, Plaintiff,

v.

**BARNETT BANK OF PINELLAS COUNTY, a Florida Corporation, and Claudia Johnson, Defendants.**

No. 94–1650–CIV–T–17B.

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 22, 1996.

Mark P. Kelly, Freeman, Lopez & Kelly, P.A., Tampa, FL, John J. Chamblee, Jr., Law Office of John J. Chamblee, Jr., Tampa, FL, for plaintiff.

David J. Stefany, Maria N. Sorolis, Hogg, Allen, Norton & Blue, P.A., Tampa, FL, for defendants.

## ORDER ON DEFENDANTS' MOTION TO STRIKE AND MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, Chief Judge.

This action is before the Court on the following motions and responses:

1. Defendant Barnett Bank of Pinellas County (hereinafter Barnett) and Defendant Claudia Johnson's motion for summary judgment and supporting memorandum of law, filed November 7, 1995. (Docket No. 22).

2. Plaintiff's memorandum in opposition to Defendants' motion for summary judgment, filed November 28, 1995. (Docket No. 29).

3. Defendants' motion, with memorandum in support, to strike portions of Plaintiff's memorandum in opposition, filed December 22, 1995. (Docket No. 32).

4. Plaintiff's memorandum in opposition to Defendants' motion to strike, filed January 31, 1996. (Docket No. 35).

### BACKGROUND

Plaintiff has filed a complaint against Defendants, alleging pregnancy and racial discrimination under 42 U.S.C. § 2000(e) (Title VII). In addition, Plaintiff alleges that Barnett defamed her.

In order to evaluate the Defendants' motion to strike and motion for summary judgment, this Court believes that a thorough recitation of the relevant facts is required. Plaintiff is a white female who was hired in March of 1993 as the Sales and Service Manager (SSM) for Barnett's South St. Petersburg office. Plaintiff's employment was a result of the merger/acquisition of First Florida Banks and Barnett Banks, Inc. Plaintiff reported to Defendant Johnson, an African–American female, who was the South St. Petersburg office manager. Plaintiff functioned as Defendant Johnson's assistant manager. (Docket No. 23) At all times pertinent to this action, Defendant Johnson was "partnered" with Lee Johnson, an African–American, who managed Barnett's Southeast office. Barnett designed manager partnerships to provide less experienced managers with advice and assistance from more experienced managers.

On September 30, 1993, six (6) months after the working relationship began, Defendant Johnson counseled Plaintiff on her performance as a SSM which was considered deficient by Defendant Johnson. (Docket No. 29) In addition, Defendant Johnson issued a warning notice, documenting the problems Plaintiff was having at work. (Johnson Deposition, Exhibit 3) These problems related to Plaintiff's inability to work at a pace satisfactory to Defendant Johnson. (Docket No. 23) At this time, Defendant Johnson began keeping a file on Plaintiff's performance. (Johnson Deposition, Exhibit 1) Subsequently, Diane Cason, an African–American employee at the South St. Petersburg office, who was not pregnant, expressed an interest in a SSM position. Thereafter, Defendant Johnson "targeted" Ms. Cason and began training her for the responsibilities of the position. Defendant Johnson used the term "targeted" in her deposition to explain that Cason had expressed an interest in the position and would be developed as an eligible SSM.

On August 31, 1993, Plaintiff met with Rinda Bruce, Director of Barnett's Human Resources, and Alex Passarello, an investigator for Barnett's Security Department, con-

cerning her employee checking account.[1] Barnett's security flagged Plaintiff's account for excessive activity; they were concerned about "check kiting" and commercial activity. In the August meeting, Plaintiff explained that she had been using her account to deposit checks from a personal business she operated with her husband. Bruce instructed Plaintiff to discontinue the commercial activity and Plaintiff complied. In addition, Plaintiff and Bruce discussed the possibility of Plaintiff closing her account. Following this meeting, Passarello conducted a thorough investigation into Plaintiff's alleged "check kiting" and concluded that Plaintiff was not kiting checks. (Passarello Affidavit)

On October 1, 1993, Plaintiff received a memo concerning the results of the August meeting with Bruce and Passarello.[2] The memo stated that Plaintiff's account continued to show excessive activity due to excessive credits and low collected balance. In addition, the memo reported an overdraft on Plaintiff's account for $262.72. The memo concluded with the following statement: "[c]ontinued use of this account in the manner shown above will result in further action with respect to your employee account." (Johnson Deposition, Exhibit 16) Bruce, Passarello, and Plaintiff all signed and dated this memo.

On October 4, 1993, Plaintiff notified Defendant Johnson that she was thirteen (13) weeks pregnant. Thereafter, Defendant Johnson continued to have problems with Plaintiff's performance on the job. (Docket No. 23) In November 1993, Defendant Johnson placed Plaintiff on probation for failing to meet the standards Defendant Johnson expected of her as SSM.

On December 8, 1993, Plaintiff's physician recommended she take two (2) weeks leave of absence from her job due to her back pain. This leave of absence was to begin two (2) days later, on December 10th. Likewise, on December 10th, Defendant Johnson sent Plaintiff a probationary document, referencing a second overdraft on Plaintiff's employee checking account. The document stated that Plaintiff had overdrawn her account for $132.00. Defendant Johnson concluded the document by stating: "[a]ny evidence of continued misuse of your employee account at any time in the future will result in immediate termination of your employment." (Johnson Deposition, Exhibit 15) Both Defendant Johnson and Plaintiff signed the document.

Barnett's overdraft policy for its employee checking allows an employee a total of three (3) overdrafts in a six (6) month period. The policy states that "[o]n the second overdraft, within a 6-month period, the employee will be charged and the check returned. A letter of warning will be sent to the employee's supervisor for appropriate review and counseling with the employee." (Johnson Deposition, Exhibit 5)

Furthermore, Barnett's overdraft policy does not threaten an employee's continued employment in cases of repeated offenses. The policy states that:

> [o]n the third overdraft, within a 6-month period, the employee will be charged and the check returned. A notice to close the employee's checking account will be sent to the employee's supervisor. The employee will no longer be afforded the privilege of a checking account with Barnett Bank. A letter of the violation will be placed in the employee's file.

(Johnson Deposition, Exhibit 5) Following the December 10th probation, Plaintiff incurred a third overdraft in the amount of $3.61 during her leave of absence. After being notified of the overdraft on December 24, 1993, Plaintiff wrote a memo on December 26 to Bruce, explaining what caused the overdraft.

Defendants terminated Plaintiff on December 28, 1993, for improper use of her employee checking account which included: (1)

---

1. Barnett requires its employees to maintain a checking account or savings account for automatic deposit of their salaries. In addition, Bruce stated that meetings regarding improper activity on employee accounts are not uncommon.

2. There is a discrepancy as to whether a second meeting was actually held on October 1, 1993. Nonetheless, Plaintiff was, in fact, contacted a second time concerning her employee checking account. (*See* Bruce Affidavit, Exhibit D and Plaintiff's Deposition, Exhibit A, 73–74)

writing checks on money not in her account, i.e. overdrafts; (2) using her account to transact commercial business; (3) maintaining an exceedingly low balance in her account; and (4) failing to appropriately maintain her personal finances. (Docket No. 23) Plaintiff's position as SSM was never posted to elicit applications for possible replacements. (Johnson Deposition, 41–43) Defendant Johnson stated that Barnett has a procedure called "posting" used for the purpose of identifying positions that are vacant at Barnett. Subsequently, Defendant Johnson replaced Plaintiff's SSM position with Diane Cason, a nonpregnant African–American.

Plaintiff stated that she did not misuse her account. Plaintiff contends that any problems with her account due to excessive activity were either unfounded or resolved. Furthermore, Plaintiff argues that "inquiries into her account were unrelated to her employment until Defendant Johnson became involved" on December 10, 1993. (Docket No. 29) Plaintiff asserts that the true motivations for her discharge were based on Defendant Johnson's intention to make a place for Cason and constitutes discrimination against Plaintiff on the basis of race and pregnancy. (Docket No. 29)

## MOTION TO STRIKE

This Court will first address Defendants' motion to strike portions of Plaintiff's memorandum in opposition to Defendants' motion for summary judgment. Defendants contend that these portions of Plaintiff's memorandum are "immaterial, irrelevant, and unduly prejudicial to Defendants." (Docket No. 30)

■ Rule 12(f), Fed.R.Civ.P., allows a matter to be stricken from a pleading which is "redundant, immaterial, impertinent, or scandalous." However, this Court has previously held in, *Dah Chong Hong, Ltd. v. Greenhouse, Inc.,* 719 F.Supp. 1072, 1073 (M.D.Fla.1989), that such motions to strike are not favored, often being considered "time wasters," and will usually be denied unless the allegations have no possible relation to the controversy and might cause prejudice to one of the parties. *Cherry v. Crow,* 845 F.Supp. 1520, 1524 (M.D.Fla.1994); *Poston v. American President Lines, Ltd.,* 452 F.Supp.

568, 570 (S.D.Fla.1978) (citing *Augustus v. Board of Public Instruction,* 306 F.2d 862 (5th Cir.1962)). Furthermore, when there is no showing of prejudice to the moving party, courts generally are not willing to determine disputed and substantial questions of law upon a motion to strike. Under such circumstances, courts should defer action and leave the sufficiency of the allegations for determination on the merits. *Augustus,* 306 F.2d at 868.

■ First, Defendants asserts that the following paragraph has no factual support in Plaintiff's memorandum in opposition to Defendants' motion for summary judgment:

> [Defendant] Johnson lied about PLAINTIFF's performance evaluation: either one was prepared before September 30—and destroyed because it was good—or one was never prepared and [Defendant] JOHNSON'S detailed recollection of it and her discussion of its content with PLAINTIFF, is false.

(Docket No. 29) A careful reading of Federal Rule of Civil Procedure 12(f) only allows matters to be stricken from "pleadings." Plaintiff's memorandum in opposition is not a pleading under Federal Rule of Civil Procedure 7(a). This Court recognizes that this statement is without factual support, however this statement has no effect on this Court's determination of Defendant's motion for summary judgment.

Second, Defendants contend that all factual references to Tracy Campbell in Plaintiff's memorandum should be stricken as irrelevant, immaterial, and prejudicial. Again, there is no basis under Federal Rule of Civil Procedure 12(f) for Defendants request to strike these portions of Plaintiff's memorandum. However, under the facts of this case, the alleged relationship between Defendant Johnson and Lee Johnson is sufficient to admit Campbell's statements regarding Lee Johnson's prior discriminatory conduct. The "partner" relationship, if proved as alleged, may reveal that the two (2) managers jointly made managerial decisions affecting Plaintiff. Therefore, evidence of discrimination by Lee Johnson circumstantially supports the infer-

ence that Defendant Johnson intentionally discriminated against Plaintiff.

In addition, Defendants argue that paragraph eight, nine, ten, eleven, fifteen, and twenty of Plaintiff's memorandum are irrelevant. These paragraphs state:

8. Campbell experienced racial discrimination in the Southeast office include, but are not limited to the following: being excluded from conversations and activities because of her race and "because she had no knowledge of black culture, black food or black issues;" encouragement and condoning of insubordination by black employees toward Campbell, their manager. Campbell Affid. P.9. This experience was substantially similar to PLAINTIFF's treatment by Defendant Johnson described in P. 4, above.

9. Campbell complained to Mitzi Bailey ("Bailey"), [Barnett's] Area Operations Coordinator, on numerous occasions, from the first week of her employment until the last, of the racial problems and disparate treatment at the Southeast Office by Lee Johnson. On or about February, 1993, Bailey stated to Campbell; [sic] 'I'm surprised Barnett hasn't gotten into trouble for the hiring practices at your office.' Campbell Aff. P. 10.

10. In November, 1993, after a Sales and Service meeting, Campbell told Bailey that she was being discriminated against because of her race. Bailey stated; [sic] 'We know there's a problem and upper management is looking into it.' Campbell Aff. P. 11.

11. In February, 1994, Bailey stated to Campbell, "Tracy, there's nothing you can do but take it. Lee is protected because she is one of the few black managers in Pinellas." Campbell Aff. P. 12.

15. The day following the conversation referred to above, Campbell returned to work at Southeast and asked permission from Lee Johnson to talk to someone in Human Resources, which she did; it was decided that she would not return to the Southeast Office; her belongings were taken from her desk; the notebook where she was recording events and statements as suggested by the EEOC, was never recovered or returned to her. Campbell Aff. P. 18. On or about March, 1994, Campbell was demoted to teller; as a consequence, she was constructively discharged on or about April 20, 1994. Campbell Aff. P. 19.

20. During Tracy Campbell's pregnancy, from September, 1992 to April, 1993, Lee Johnson, Officer Manager of the Barnett Southeast office, forced her to change numerous doctor's appointments. In or about November, 1992, Campbell started bleeding while on the teller line. Her doctor stated that it was an emergency and instructed her to immediately go to a clinic for an ultrasound. Lee Johnson said, "No this is the busiest day of the month. We're too busy for you to leave. You have to wait for Talya to get back from lunch and must cover for her." Lee Johnson also required Campbell to balance her drawer which took an additional 30 to 40 minutes. She was unable to leave for an hour and her doctor said she could have miscarried. She missed two days of work; when she returned, Lee Johnson had changed the schedule so that instead of the black employees opening, Campbell had to open the bank every day. Campbell Aff. P. 15.

(Docket No. 31) These statements along with all other factual references to Campbell are relevant and material to Plaintiff's claim. Such statements may circumstantially show that Barnett knew of racial discrimination against white employees within its branch offices. In addition, these statements provide several examples of racial discrimination by Defendant Johnson's "partnered" manager, Lee Johnson. This type of alleged discriminatory conduct is recognized in employment discrimination cases on the issue of motive and intent. Thus, Campbell's statements may be admissible to show that Defen-

dants had knowledge of racial discrimination in its branches and in rebutting Defendants' legitimate reasons for discharging Plaintiff.

As to Defendants' Federal Rule of Evidence 403 argument, the Court finds no unfair prejudice. Given the difficulty of proving employment discrimination, a rule that evidence of other discriminatory acts by or attributable to the employer can never be admitted without violating Rule 403 would be unjustified. *Webb. Hyman,* 861 F.Supp. 1094, 1111 (D.D.C.1994). The Court finds that Plaintiff's factual references to Campbell are relevant and should be left for determination on their merits.

## STANDARD FOR SUMMARY JUDGMENT

Defendants have also moved for summary judgment as to Plaintiff's Title VII and defamation claims. Summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the non-moving party. *Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All doubts regarding the existence of a genuine issue as to any material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant,* 595 F.2d 994, 996–97 (5th Cir. 1979) (quoting *Gross v. Southern Railway Co.,* 414 F.2d 292 (5th Cir.1969)).

In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the United States Supreme Court held:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial.

*Id.* at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. The Court also stated: "Rule 56(e) . . . requires that the non-moving party go beyond the pleadings and her own affidavits, or

by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274.

"It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 919 (11th Cir.1993) (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, to withstand a motion for summary judgment, the plaintiff need only show that a genuine question exists as to whether the reason for the decision was intentional discrimination—an issue on which the Plaintiff carries the burden of persuasion. *Howard v. BP Oil Co.,* 32 F.3d 520, 524 (11th Cir.1994).

In *Earley v. Champion Int'l Corp.,* 907 F.2d 1077 (11th Cir.1990), the court recognized that the summary judgment procedure "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules . . . ." *Id.* at 1090 (citing *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555). The court further stated that "[s]ummary judgments for defendants are not rare in employment discrimination cases" and that if a plaintiff has failed to carry his burden of proof by offering evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 1080–1081.

## I. TITLE VII—RACIAL DISCRIMINATION

■ In a Title VII discrimination case, a plaintiff may use either of two (2) methods of proof to establish a racial discrimination claim. These methods present different evidentiary paths to prove the ultimate issue of discriminatory intent. *Randle v. LaSalle Telecommunications, Inc.,* 876 F.2d 563, 569 (7th Cir.1989). Under the first method, a plaintiff may prove discriminatory intent through direct evidence.[3] The plaintiff's di-

---

**3.** Direct evidence of discrimination is "evidence, which if believed, proves existence of fact in issue without inference or presumption." Black's Law Dictionary 413 (5th ed. 1979).

rect evidence "must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question." *Randle,* 876 F.2d at 569. Under the second, and more commonly used method, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ The Court will first consider whether Plaintiff has presented direct evidence of racial discrimination. Plaintiff contends that Mitzi Bailey's, Barnett's Area Operations Coordinator, admission acknowledging race discrimination against white employees in Barnett's branch offices is direct evidence. Such evidence, even when accepted as true, is not direct evidence that Plaintiff's termination was motivated by racial animus and does not relate to the specific employment decision at hand. An example of direct evidence would be a note stating, "Fire Rollins—she is too old." *See Williams v. General Motors Corp.,* 656 F.2d 120, 130 (5th Cir. 1981); *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

■ Absent direct evidence, the standard for building a *prima facie* case of discrimination is based on the *McDonnell Douglas* test. The plaintiff must prove discriminatory intent by a preponderance of the evidence in order to prevail. If the plaintiff meets this burden, the presumption arises that the employer discriminated unless the employer can articulate some legitimate, nondiscriminatory reason for the employee's treatment. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Lastly, in a third shift of the burden, the plaintiff must prove, by a preponderance of the evidence, that the legitimate, nondiscriminatory reasons offered by the employer were not true reasons, but were mere pretext for discrimination. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. However, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Bur-*

*dine,* 450 U.S. at 253, 101 S.Ct. at 1093, 67 L.Ed.2d at 207.

■ The *McDonnell Douglas* line of cases established a four (4) part test for a plaintiff to establish a *prima facie* case: (1) that the plaintiff is a member of a protected class under Title VII; (2) that the plaintiff was qualified for the job from which she was dismissed; (3) that the plaintiff was terminated despite her qualifications, and (4) that an employee of a different race replaced the plaintiff. *McDonnell Douglas,* 411 U.S. at 801–02, 93 S.Ct. at 1824; *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181 (11th Cir.1984); *McKeon v. Vaicaitis,* 825 F.Supp. 290 (M.D.Fla.1993). The *McDonnell Douglas* test addresses our nation's history of racial discrimination, "a legacy of racism so entrenched that we presume acts, otherwise unexplained, embody its effect." *Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 67 (6th Cir.1985). *See Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *Parker v. Baltimore and Ohio Railroad, Co.,* 652 F.2d 1012, 1017 (D.C.Cir.1981).

Once a plaintiff has met the *McDonnell Douglas* standard, there is a presumption creating a *prima facie* case of discrimination. *Furnco,* 438 U.S. at 577, 98 S.Ct. at 2949, 57 L.Ed.2d at 957. As the *Furnco* Court indicated, "[a] prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on consideration of impermissible factors." *Id. See Livingston v. Roadway Exp., Inc.,* 802 F.2d 1250, 1251 (10th Cir.1986) (stating that "these presumptions are the 'procedural embodiment of the recognition that our nation has not yet freed itself from a legacy of hostile discrimination.' ").

■ It is axiomatic that Title VII prohibits racial discrimination against all groups. *McDonald,* 427 U.S. at 279, 96 S.Ct. at 2578, 49 L.Ed.2d 493 (1976). *See Pilditch v. Board of Education,* 3 F.3d 1113, 1116 (7th Cir.1993); *Notari v. Denver Water Dep't,* 971 F.2d 585, 588 (10th Cir.1992); *Livingston,* 802 F.2d at 1252; *Murray,* 770 F.2d at 67; *Parker,* 652

F.2d at 1017. However, the Supreme Court has not addressed whether the *McDonnell Douglas prima facie* standard must be altered in a reverse discrimination claim. Plaintiff of course is not a member of a racial minority—this case involves alleged discrimination against a white by an African–American. In a reverse discrimination case, like this one, the presumptions of Title VII analysis are not necessarily justified. *Notari,* 971 F.2d at 588.

Some courts have required a slight modification of the *McDonnell Douglas* standard by requiring the plaintiff to show the existence of "background circumstances [which] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Notari,* 971 F.2d at 588 (citing *Parker,* 652 F.2d at 1017); *Livingston,* 802 F.2d at 1252 (applying background circumstances in impact cases as well as in disparate treatment cases); *Murray,* 770 F.2d at 67. *But see Collins v. School Dist. of Kansas City, Mo.,* 727 F.Supp. 1318, 1320 (W.D.Mo.1990) (rejecting the background circumstances requirement); *Ustrak v. Fairman,* 781 F.2d 573, 577 (7th Cir.), *cert. denied,* 479 U.S. 824, 107 S.Ct. 95, 93 L.Ed.2d 47 (1986) (stating that the *McDonnell Douglas* standard was designed to protect women and minorities, not whites). However, the *McDonnell Douglas prima facie* elements were never meant to be applied rigidly. *See McDonnell Douglas,* 411 U.S. at 802, n. 13, 93 S.Ct. at 1824, n. 13 (providing that "the facts necessarily will vary in Title VII cases, and the specification ... of the prima facie proof required ... is not necessarily applicable in every respect to differing factual situations); *McDonald,* 427 U.S. at 279, n. 6, 96 S.Ct. at 2578, n. 6 (stating that "... [these elements were] set out only to demonstrate how ... discrimination could be established in the most common sort of cases, and not as an indication of any ... limitation of Title VII's prohibition ...").

■ In the instant case, Defendants do not contest that Plaintiff has proven a *prima facie* case. (Docket No. 23) The application of the *prima facie* case to the unique facts of this case establishes a presumption of discrimination. Plaintiff has met her threshold requirement. Plaintiff was adequately qualified for her position, she was fired, and the employer found a non-pregnant, African–American to replace her. Therefore, the burden now shifts to Defendants to produce a legitimate, nondiscriminatory reason for the adverse action taken.

■ In general, Defendants have an "exceeding light burden" in setting forth legitimate, nondiscriminatory reasons for termination. *Perryman v. Johnson Products Co.,* 698 F.2d 1138, 1142 (11th Cir.1983). In satisfying their burden, Defendants have proffered the following reasons for terminating Plaintiff's employment: (1) Plaintiff wrote checks on money not in her employee checking account; (2) Plaintiff used her employee checking account to transact commercial business; (3) Plaintiff maintained an exceedingly low balance in her employee checking account; (4) Plaintiff caused overdrafts in her employee checking account; and (5) Plaintiff failed to appropriately maintain her personal finances. (Docket No. 23)

■ The Eleventh Circuit has held that this Court does not sit "as a super-personnel department that re-examines an entity's business decision." *Alphin v. Sears–Roebuck and Co.,* 940 F.2d 1497, 1501 (11th Cir.1991). Therefore, Defendants may discharge Plaintiff "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix,* 738 F.2d at 1187. Even if the underlying reasons for terminating Plaintiff are untrue, absent a showing of discrimination, the employment decision is protected under Title VII.

■ Since Defendants have carried their burden by showing a legitimate, nondiscriminatory reason for the adverse action taken, the ultimate burden shifts back to Plaintiff to demonstrate, by a preponderance of the evidence, sufficient factual proof that the proffered reason for the discharge was merely pretextual. *McDonnell Douglas,* 411 U.S. at 792, 93 S.Ct. at 1817; *Perryman,* 698 F.2d at 1142; *Irizarry v. Palm Springs General Hospital,* 680 F.Supp. 1528 (S.D.Fla.1988). Plaintiff may be successful in carrying this burden on two (2) fronts: either (1)

**1254**

directly, by establishing that the discharge was more likely than not motivated by discriminatory intent; or (2) indirectly, by showing that Defendants' proffered explanation is unworthy of credence. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. In addition, Plaintiff must present significantly probative evidence to support her pretextual argument. *Young v. General Foods Corp.,* 840 F.2d 825, 829 (11th Cir.1988) (citing *Celotex,* 477 U.S. at 317, 106 S.Ct. at 2548, 91 L.Ed.2d at 265 (1986)); *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. This Court will make all reasonable inferences most favorable to Plaintiff when reviewing Defendants' motion for summary judgment. *Walls v. Button Gwinnett Bancorp, Inc.,* 1 F.3d 1198, 1200 (11th Cir.1993).

Plaintiff has come forward with circumstantial evidence concerning possible racial discrimination. First, Plaintiff has presented a valid argument that Defendants' proffered explanation is unworthy of credence. The record indicates that Barnett's overdraft policy does not relate the use of an employee checking account to that employee's future employment. Instead, the policy designs a procedure from which an employee may lose the benefits of the account if repeated overdrafts occur.

Second, Defendant Johnson was the only one to sign the December 10th probation document concerning Plaintiff's second overdraft. This document was the first and only statement which tied Plaintiff's account use to employment discipline. Bruce's prior October 1st statement merely referenced action against Plaintiff's account.

Third, Plaintiff offers several examples of how Defendant Johnson intentionally discriminated against her. Plaintiff states that Defendant Johnson gave preferential treatment to Cason: (1) by targeting and training her for the SSM position; (2) by giving her special projects and opportunities not offered to Plaintiff; (3) by frequently meeting with Cason privately in Defendant Johnson's office; and (4) by placing Cason in Plaintiff's SSM position without first posting the vacant position.

 It is well settled that bare allegations and unsupported legal conclusions do not show pretext or intentional discrimina-

tion. *See Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 597 (11th Cir.1987); *McKeon v. Vaicaitis,* 785 F.Supp. 965 (M.D.Fla.1992). A plaintiff's subjective opinion that the defendant's action was discriminatory, without supportive evidence, is not sufficient to establish pretext to avoid summary judgment. *Carter v. City of Miami,* 870 F.2d 578, 585 (11th Cir.1985). However, Plaintiff has gone further than bare allegations and subjective opinion; she has provided additional evidence. For the purposes of summary judgment, the Court views this evidence in the light most favorable to Plaintiff.

Plaintiff has demonstrated that a nexus exists between Barnett's South St. Petersburg and Southeast Offices. Given the "partnership" relationship between Defendant Johnson and Lee Johnson, Campbell's statements provide a reasonable inference that discriminatory animus was present in both offices. This evidence, coupled with Mitzi Bailey's agency admission acknowledging racial discrimination within Barnett's branches, establishes additional weight to Plaintiff's pretexual argument.

When viewing the evidence in the light most favorable to the non-moving party, Plaintiff has presented evidence from which a jury could infer that Defendants' legitimate reasons were pretexual. Defendants have presented convincing reasons supporting the discharge; however, Plaintiff's indirect evidence of pretext requires a credibility determination. *Castle v. Sangamo Weston, Inc.,* 837 F.2d 1550, 1559 (11th Cir.1988) (providing that "assessing the weight of the evidence and the credibility of witnesses is reserved for the trier of fact"); *Equal Employment Opportunity Comm'n v. Ethan Allen, Inc.,* 44 F.3d 116, 120 (2d Cir.1994).

 Plaintiff has demonstrated to this Court that a genuine issue of fact exists as to whether Plaintiff was a victim of racial discrimination, whether Defendant Johnson's actions were racially motivated, and whether Defendants asserted reasons for Plaintiff's termination were truly legitimate and non-discriminatory. Plaintiff's evidence is "significantly probative" on the issue of racial discrimination and does not appear to be

"merely colorable." *Earley,* 907 F.2d at 1080–81.

## II. TITLE VII—PREGNANCY DISCRIMINATION

■ Title VII also prohibits sex discrimination on the basis of an employee's pregnancy, and the *McDonnell Douglas* test may be applied in pregnancy discrimination cases. *Armstrong v. Flowers Hospital, Inc.,* 33 F.3d 1308, 1312 (1994) (stating that "the analysis required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits) (citing *Maddox v. Grandview Care Center, Inc.,* 780 F.2d 987, 989 (11th Cir.1986). *See McDonnell Douglas,* 411 U.S. at 802, n. 13, 93 S.Ct. at 1824, n. 13; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *McDonald,* 427 U.S. at 279, n. 6, 96 S.Ct. at 2578, n. 6.

Assuming that Plaintiff has demonstrated a *prima facie* case, Defendants have satisfied their burden in showing that the decision to discharge her was based on legitimate, nondiscriminatory reasons. As discussed earlier, Defendants have shown that they terminated Plaintiff due to her failure to adequately manage her employee checking account. Therefore, Plaintiff must establish that these reasons were a pretext for pregnancy discrimination.

Plaintiff significantly limits her pretextual reason for pregnancy discrimination, apparently focusing on her reverse discrimination claim. This is the evidence that Plaintiff offered to prove Defendants' discriminatory intent: Defendant Johnson's file on Plaintiff's pregnancy; Plaintiff's accumulation of over 1,000 hours of sick time for maternity leave; Plaintiff's termination on December 28, 1993, occurring while she was on medical leave due to her pregnancy; and Lee Johnson's treatment of Campbell at the Southeast Office while Campbell was pregnant. (Docket No. 20).

■ This Court will also take into consideration much of the supporting evidence presented in Plaintiff's reverse discrimination claim. Plaintiff's arguments on Defendant Johnson's probationary document sent on December 10th and Barnett's overdraft policy are significant, given the fact that Plaintiff informed Defendant Johnson that she was pregnant on October 4, 1993. Taking all the evidence as a whole, a reasonable inference may exist that Defendants' reasons for discharging her were a pretext for pregnancy discrimination. Plaintiff has provided evidence which could lead a reasonable factfinder to infer that Defendants discharged her due to her pregnancy.

## III. DEFAMATION CLAIM

■ Defendants have also moved for summary judgment as to Plaintiff's claim for defamation. The elements that a plaintiff must prove in a defamation case are that the defendant published a false statement, that the statement was communicated to a third party, and that the plaintiff suffered damages as a result of the publication. *Shaw v. R.J. Reynolds,* 818 F.Supp. 1539, 1541 (M.D.Fla. 1993) (citing *Baker v. McDonald's Corp.,* 686 F.Supp. 1474 (S.D.Fla.1987), *aff'd,* 865 F.2d 1272 (11th Cir.1988)); *Axelrod v. Califano,* 357 So.2d 1048 (Fla.Dist.Ct.App.1978).

■ Plaintiff contends that Barnett published statements to its employees that she was fired for engaging in "check kiting" or misusing her checking account. (Docket No. 29). To support her claim, Plaintiff stated that she was told by two (2) former Barnett employees that they thought "[she] had been fired for misuse of her account." (Docket No. 29). The Court cannot accept these statements as competent evidence of defamation—mere gossip cannot be construed as defamatory.

■ Plaintiff also relies on Campbell's affidavit to support her defamation claim. Campbell stated that Chris Connell, Barnett's operations manager, told her that "an announcement was made in his office to all the employees that Ms. Bush had been kiting checks and they had to let her go." (Campbell Affidavit, Para. 4, Docket No. 29). In a defamation case, the mere utterance is an operative fact that gives rise to legal consequences. Because Plaintiff may introduce a defamatory statement to prove that it was made, rather than to prove the truth of the matter asserted, the statement is not hear-

**1256**

say. However, Plaintiff attempts to introduce this admissible statement via Campbell and Connell's out-of-court declarations. These declarations do not fall into any non-hearsay or exception to hearsay category and thus are inadmissible.

■ In order for this Court to consider inadmissible evidence, *Celotex* requires the evidence to be substantively admissible, even if the actual form of the information is not. This view is in accord with several Circuit Courts of Appeals. In *Thomas v. International Business Machines,* 48 F.3d 478 (10th Cir.1995), the court stated that "the nonmoving party need not produce evidence in a form that would be admissible at trial but the content or substance of the evidence must be admissible." *Id.* at 485 (citing *Winskunas v. Birnbaum,* 23 F.3d 1264, 1267–68 (7th Cir. 1994)). The *Thomas* court went on to state that "hearsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because 'a third party's description of ... supposed testimony is not suitable grist for the summary judgment mill.'" *Id.* (citing *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)).

Furthermore, the First Circuit held that "[h]earsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment. Thus, absent a showing of admissibility ... [a party] may not rely on rank hearsay, whether or not embodied in an interrogatory answer or to oppose proper motions for summary judgment." *Garside v. Osco Drug, Inc.,* 895 F.2d at 50 (citing *Randle v. LaSalle Telecommunications, Inc.,* 876 F.2d 563, 570 n. 4 (7th Cir.1989)); *Martin v. John W. Stone Oil Distributor, Inc.,* 819 F.2d 547, 549 (5th Cir.1987); *Pink Supply Corp. v. Hiebert, Inc.,* 788 F.2d 1313, 1319 (8th Cir. 1986); *Finn v. Consolidated Rail Corp.,* 782 F.2d 13, 16–17 (1st Cir.1986); *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F.2d 665, 667 (9th Cir.1980); *Daily Press, Inc. v. United Press International,* 412 F.2d 126, 133 (6th Cir.), *cert. denied,* 396 U.S. 990, 90 S.Ct. 480, 24 L.Ed.2d 453 (1969); *Morrissey v. Procter & Gamble Co.,* 379 F.2d 675, 677 n. 2 (1st Cir.1967)). This Court finds that requiring the submission of admissible evidence in opposition to a motion for summary judgment is in accord with the Federal Rules of Civil Procedure and the Supreme Court's holding in *Celotex.* See Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555. Plaintiff's evidence presented in her memorandum in opposition to Defendants' motion for summary judgment must set forth evidence as would be admissible at trial, and thus must be reducible to admissible evidence.

However, in this case, Campbell's testimony is offered to prove that Barnett in fact published a defamatory statement to third parties—a statement offered to prove the truth of the matter asserted. Plaintiff presented no affidavit or deposition from Connell; therefore, Campbell's quotation of Connell is pure hearsay. This Court finds that Campbell's allegation is a classic example of hearsay and will not be considered since it is incompetent evidence with respect to a crucial element of Plaintiff's burden of proof. *See Shaw,* 818 F.Supp. at 1542; *Rohrbough v. Wyeth Laboratories, Inc.,* 916 F.2d 970 (4th Cir.1990); *Vidrine v. Enger,* 752 F.2d 107, 108 (5th Cir.1984). Plaintiff has failed to prove that Barnett published a false statement. Accordingly, it is

**ORDERED** that Defendants' motion to strike be **DENIED;** that Defendants' motion for summary judgment be **GRANTED,** in part with respect to Plaintiff's defamation claim in Count II of Plaintiff's First Amended Complaint, and **DENIED,** in part with respect to Plaintiff's Title VII claims in Count III of Plaintiff's First Amended Complaint.

**DONE and ORDERED.**