**Michael J. MOLENDA, Plaintiff,**

v.

**HOECHST CELANESE CORPORATION, Defendant.**

**No. 97–2046–Civ.**

United States District Court, S.D. Florida, Miami Division.

March 16, 1999.

Merrick L. Gross, Susan N. Eisenberg, Jeremy P. Leathe, Akerman, Senterfitt & Eidson, P.A., Miami, FL, for defendant.

Margaret M. Ciraldo, Ciraldo Law Offices, P.A., Coral Springs, FL, for plaintiff.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SEITZ, District Judge.

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment [D.E. No. 128]. For the reasons set forth below, the Court grants the motion as to the "Latin American incident" in Count I (the whistle-blower claim), as to Count III (breach of contract), as to Count IV (defamation), and as to Count V (age discrimination) of the Third Amended Complaint.

### INTRODUCTION

This is an action for damages and equitable relief for alleged violations of the Florida Whistle-blower's Act ("the Act"), Section 448.102(3), Florida Statutes (1997), and the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 et seq., and also for defamation and breach of contract. Plaintiff asserts he was terminated in retaliation for reporting illegal conduct by his supervisor and by business associates. Plaintiff also asserts he was terminated because of his age. Additionally, Plaintiff alleges that Defendant failed to pay him a bonus that was due and owing at the time he was terminated. Finally, Plaintiff claims that, after he was terminated, Defendant made untrue and defamatory remarks about Plaintiff's work performance while employed with Defendant.

In response to Plaintiff's allegations, Defendant moved for summary judgment, asserting that Plaintiff was terminated as a result of a corporate restructuring which changed the format of the division in which Plaintiff worked from an individual-oriented sales approach to a team concept. It was the consensus of management that Plaintiff did not fit the profile of a "team player" and, therefore, he was terminated. Defendant further denies that Plaintiff was entitled to a bonus. Defendant also asserts that no defamatory statements were made about Plaintiff or, if such were made, there is no evidence that they were published. Alternatively, Defendant argues that the statements, if made and published, were privileged as a matter of law and, therefore, are not actionable.

### UNDISPUTED MATERIAL FACTS

The Court finds that the following material facts are not in dispute and are relevant to a resolution of the issues presented herein:

A. *Corporate Structure.*

1. Defendant, Hoechst Celanese Corporation, is an American company, which is a subsidiary of Hoechst AG in Germany.

2. Hoechst AG is also the parent company of the wholly-owned subsidiaries Hoechstdo–Brazil and Hoechst–Columbia.

3. Hoechstdo–Brazil. and Hoechst–Columbia are legal entities separate from Defendant, and Defendant has no ownership in those entities. The employees of each corporation are not employees of the Defendant.

4. Hoechst AG also has an 11% interest in Celanese Mexicana, S.A., and Defendant has a 40% interest in that corporation. The remainder of Celanese Mexicana is owned by the Mexican general public.

B. *Plaintiff's Employment History with Defendant.*

1. Plaintiff, Michael J. Molenda, was born on November 1, 1954, and is presently 44 years old.

2. Plaintiff was originally hired by Defendant in 1980. In 1991, he was promoted to the position of marketing manager for Latin America in Defendant's Technical Polymers Division.

3. As marketing manager, Plaintiff's primary work responsibility was to be the interface between the Defendant and the Latin American affiliates (the re-sellers of Defendant's products) and direct customers in those regions. Plaintiff was assigned to the Miami office, where he was the sole employee.

4. In 1994, Plaintiff's supervisor was Nick Pericich. During that year, Defendant conducted an investigation into rumors that Pericich was involved in taking illegal kickbacks and compromising company financial dealings.

5. At the time of the investigation, Brian O'Reilly was Vice President of Human Resources. In that capacity, he facilitated discussions between Plaintiff and Ron Silversten, the associate general counsel for Defendant who conducted the investigation.

6. Following the investigation, Pericich was induced to resign. O'Reilly then assumed Pericich's position as Vice President of Sales and Marketing in April 1995.

7. Plaintiff received a good performance review for 1995. O'Reilly made no criticisms on that review form.

8. In 1995, a sales redesign team, including outside consultants, was assembled to restructure the Technical Polymers Division's sales organization. A second implementation team composed of senior managers was then assembled to fill the positions within the newly created institutional structure. During the redesign process, the corporate structure of the Technical Polymers Division was "basically blown up" and then "put back together again in a different form." This redesign involved a shift from individual-oriented sales to a team-based system. O'Reilly was a key player in the redesign process.

9. As a result of the reorganization, Plaintiff's employment with Defendant was terminated in November, 1996. The Defendant's proffered reason for selecting Plaintiff for termination was that his character did not fit in with the new company philosophy and image because he was not, in essence, a "team player." Plaintiff admits that he had difficulty working with certain employees of the Latin American affiliates.

10. Other employees were also terminated as a result of the redesign.

11. Plaintiff's supervisors who made the decision to terminate him were Carl Amond and O'Reilly. As of the date of Plaintiff's termination, Amond was 55 years of age and O'Reilly was 56 years of age.

12. Plaintiff, who was 42 on the effective date of his termination, was replaced by Lindsey Deal, who was 39 years of age at the time.

13. On November 12, 1996, as part of the transition process, Plaintiff was informed that he would have to close down the Miami office, and return the company car and computer.

14. By letter from Plaintiff's attorney to Defendant, dated November 15, 1996, Plaintiff confirmed that he was informed

on November 12, 1996, that he would need to return the company car and computer and close down the Miami office by November 22, 1996. Plaintiff's counsel represented, however, that these matters could not be resolved until December 8, 1996.

15. By letter dated November 21, 1996, Defendant informed Plaintiff that he: will be eligible for the Management Performance Plan bonus on a pro-rated basis (through November 22, 1996). The bonus amount is determined taking into account overall corporate, group and business unit results as well as your individual performance. The exact amount of your bonus, if any, will be determined after the end of the year and, if you are entitled to a payment, it will be sent to you in February 1997.

16. By letter dated December 11, 1996, Defendant informed Plaintiff that he had not complied with the transition requirements of returning the company car, personal computer and any other company property and closing the Miami office. The letter specifically stated that "Payment of any bonus for 1996 will be contingent on your completing this office transition."

17. Plaintiff did not return the company car or computer by December 8, 1996. Plaintiff further admits that he never disconnected the telephone lines of the Miami office.

18. All bonuses are discretionary.

## STANDARD OF REVIEW

In deciding a summary judgment motion, the Court must apply the standard set forth in *Fed.R.Civ.P.* 56(c), which states in relevant part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party seeking summary judgment always bears the initial burden of demonstrating that there is no genuine dispute as to any material fact in the case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

After the moving party has met this initial burden, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56(e), however, does not permit the nonmoving party to avoid summary judgment by resting on the pleadings, but "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 251–52, 106 S.Ct. 2505.

## ANALYSIS

A. *The Florida Whistle–Blower's Act Claim.*

Plaintiff first asserts a claim under the Florida Whistle-blower's Act ("the Act"), Section 448.102(3), Florida Statutes, for retaliatory discharge. The Act provides, in pertinent part, that "[a]n employer may not take any retaliatory personnel action against an employee because the employee has: ... (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla.Stat. § 448.102(3). An employee who has been subjected to a retaliatory personnel action on account of his whistle-blowing activities has a cause of action for damages, reinstatement, and injunctive relief. Fla.Stat. § 448.103(2). If the retaliatory personnel action is predicated upon a ground other than the employee's whistle-blowing activi-

ties, however, the employee is not entitled to any relief under the Act. Fla.Stat. § 448.103(1)(c). "Retaliatory personnel action" is defined under the Act to mean "discharge, suspension, or demotion by an employer of an employee or any other adverse employment action taken by an employer against an employee in the terms and conditions of employment." Fla.Stat. § 448.101(5). "Law, rule, or regulation" refers to "any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business." Fla.Stat. § 448.101(4). The Act is to be "construed liberally in favor of granting access to the remedy." *Martin County v. Edenfield,* 609 So.2d 27, 29 (Fla.1992) (addressing Florida's public sector whistle-blower statute).

Plaintiff's whistle-blower claim arises out of two separate incidents. First, Plaintiff contends that he was retaliated against and ultimately discharged for reporting allegedly illegal activities of his prior direct supervisor, Nicholas Pericich. Specifically, in late 1994, Plaintiff testified against Pericich in an internal investigation regarding allegations of falsification of records and receipt of kickbacks (hereinafter referred to as the "Pericich incident"). Second, Plaintiff asserts that he was also retaliated against and ultimately discharged for warning his supervisor of illegal activities taking place with Defendant's money and products in Brazil. Specifically, in 1995, Plaintiff reported to his supervisor, Brian O'Reilly, that the plants in Brazil and Colombia were involved in kickback schemes and the falsification of company records (hereinafter referred to as the "Latin American incident").[1] Plaintiff asserts that both incidents violated Section 817.15, Florida Statutes.[2]

Defendant counters that most of the retaliatory conduct alleged by Plaintiff is time-barred, that the illegal activities were not undertaken by Defendant, that the conduct challenged by Plaintiff does not amount to "retaliatory personnel action" as defined by the Act, and that Plaintiff was legitimately discharged during a corporate restructuring. The Court addresses each of these arguments in turn.

1. *Statute of limitations.*

Under the Act, a plaintiff must institute an action for retaliatory personnel action within two years of when the alleged retaliatory action was taken. Fla.Stat. § 448.103(1)(a). The instant lawsuit was not filed until June 30, 1997. Hence, as previously held by the Court in its June 23, 1998 Order, retaliatory actions which occurred before June 30, 1995, are time-barred.

■ In its summary judgment motion, Defendant argues that most of the conduct underlying Plaintiff's whistle-blower claim is time-barred. To the extent Defendant's argument incorporates non-retaliatory conduct (i.e., Pericich's illegal conduct), its argument is misplaced. The statute of limitations applies to retaliatory conduct that results from an employee's blowing the whistle—*not* the allegedly illegal conduct which gave rise to the whistle-blowing.

Here, it is undisputed that the only alleged retaliatory conduct identified by Plaintiff as occurring prior to June 30, 1995, is as follows: that Plaintiff's supervisor, O'Reilly, called him a "squealer" in April and May 1995; that he refused to allow Plaintiff to attend a safety course in the summer of 1995, stating that "if you

---

1. In his deposition, Plaintiff states that the problems with Celanese Mexicana arose out of accounting differences between Mexico and the United States. As such, the activities of Celanese Mexicana do not fall within the parameters of the Act.

2. With respect to the Pericich incident, although Defendant belatedly argues in its reply

memorandum that Pericich's allegedly illegal conduct did not occur in Florida (and, thus, there can be no violation of Florida law), no record evidence has been presented in support of this contention. Moreover, the Third Amended Complaint alleges that Pericich was involved in illegal activities in connection with ENTEC, a Florida corporation.

get killed we will replace you"; that he ignored Plaintiff at meetings; that he refused to meet Plaintiff's clients and, in May or June 1995, "stood up" a customer with whom he was supposed to meet; and that he changed Plaintiff's support structure without reason or notice to Plaintiff that he (O'Reilly) was replacing the Latin American manager (Plaintiff's technical support person). With the exception of the safety course and the personnel replacement issues, the Court finds that these alleged actions do not amount to "retaliatory personnel action" as defined by the Act. While the safety course and personnel replacement issues could possibly arise to the level of "retaliatory personnel action," they are nevertheless time-barred. Thus, Plaintiff's relief is limited to the allegedly retaliatory conduct which occurred after June 30, 1995, including but not limited to his ultimate discharge.

### 2. Defendant's corporate structure.

Defendant next contends that the allegedly illegal activity reported by Plaintiff was conducted by employees of separate and distinct legal entities. Thus, Defendant argues, no "activity, policy, or practice *of the employer*" is at issue. The Act clearly provides that the allegedly illegal activity objected to by Plaintiff must have been undertaken by his *employer*. *See* Fla.Stat. § 448.102(3) (emphasis added). As to the Pericich incident, the Court finds no merit in Defendant's contention in this regard. It is undisputed that Pericich was Plaintiff's direct supervisor and an employee of Defendant. Plaintiff's reporting of Pericich's allegedly illegal conduct falls squarely within the realm of activity sought to be protected by the Act.

With respect to the Latin American incident, however, Plaintiff concedes that the persons who were allegedly engaged in the falsification of corporate records and the receipt of illegal kickbacks were all employees of entities other than Defendant.[3] Plaintiff further concedes that the Brazilian and Colombian subsidiaries of Hoechst, A.G., are separate entities and are not subsidiaries of the Defendant. Specifically, Hoechstdo–Brazil and Hoechst–Colombia—the undisputed employers of the persons engaged in the allegedly illegal activity—are 100% wholly-owned subsidiaries of Hoechst, A.G., the parent of Defendant.

"It is a general principle of corporate law deeply ingrained in our economic and legal systems that a 'parent corporation,' so-called because of control through ownership of another corporation's stock, is not liable for the acts of its subsidiaries." *United States v. Bestfoods,* 524 U.S. 51, 118 S.Ct. 1876, 1884, 141 L.Ed.2d 43 (1998). Likewise, subsidiary corporations are ordinarily independent of each other. *See* 18A *Am.Jur.2d Corporations* § 55 (1985 & Supp.1998). Indeed, the well-settled rule is that a corporation is a separate legal entity and, thus, that separate corporate form cannot be disregarded. *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 786, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). In Florida, a corporate veil will be pierced only in exceptional circumstances, such as for fraud or where the corporation is formed for some illegal purpose. *State ex rel. Continental Distilling Sales Co. v. Vocelle,* 158 Fla. 100, 27 So.2d 728, 729 (1946). In the case sub judice, there is insufficient evidence to warrant holding Defendant liable for the acts of a separate and distinct corporation that is related only by virtue of a common parent. Accordingly, the Court finds that Defendant is entitled to summary judgment on Plaintiff's whistle-

---

**3.** Although Plaintiff believes that Lindsey Deal (an employee of Defendant) *may* have been involved with those allegedly illegal activities, Plaintiff has presented no affirmative evidence in support of this contention. The law is clear that "mere belief, conjecture, or speculation ... is not sufficient to ... satisfy the plaintiff's burden in responding to a properly supported summary judgment motion." *Avril v. The Village South Inc.,* 934 F.Supp. 412, 417 (S.D.Fla.1996) (citing *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 597 (11th Cir. 1987)).

blower claim to the extent it is premised on the Latin American incident.[4]

### 3. *The remaining allegedly retaliatory personnel actions.*

As to the sole remaining basis for relief under the Act—the Pericich incident—Plaintiff asserts that he was ultimately terminated in retaliation for his involvement in that incident. As noted above, the Act clearly and expressly provides that discharge, if in fact done with retaliatory intent, is actionable. *See Vanacore v. UNC Ardco Inc.,* 697 So.2d 892, 894 (Fla. 4th DCA 1997) (holding that the Whistleblower Act provides employees with relief in the event of retaliatory discharge).

■ The Plaintiff's remaining allegations of unlawful personnel action are not quite so clear. The Act, however, does not limit "retaliatory personnel action" to wrongful discharge, but also includes "harassment, threats of demotion, and reprimand." *Robinson v. Jewish Ctr. Towers, Inc.,* 993 F.Supp. 1475, 1479 (M.D.Fla. 1998). Here, Plaintiff asserts that O'Reilly refused to supervise Plaintiff's work; attempted to circumvent Plaintiff's progress in the company by not supporting any Latin American programs initiated by Plaintiff; excluded Plaintiff from meetings and information about areas of concern to Plaintiff; and told Plaintiff to "back off" on his complaints about alleged wrongdoing in Latin America and to not bring such matters to his (O'Reilly's) attention. O'Reilly denies that any of the alleged conduct occurred, thereby creating a credibility issue which carries this matter beyond the purview of the Court on summary judgment. Moreover, given the totality of the circumstances presented in this case, the Court finds that reasonable jurors could conclude that the conduct attributed to O'Reilly, if in fact it occurred, was a pattern of harassment intended to undermine Plaintiff's position in the company. Thus, Defendant is not entitled to summary judgment on the Pericich incident on this basis.

### 4. *Defendant's non-retaliatory reason for discharge.*

■ As noted previously, the Act provides that a defendant employer can raise as a defense, and thereby avoid liability, the claim that the allegedly retaliatory personnel action was taken for reasons other than the employee's whistle-blowing activities. *See* Fla.Stat. § 448.103(1)(c). The Court finds that Defendant's fourth argument goes to this statutory defense. As such, Defendant must "conclusively prove both the factual existence of the defense upon which [it relies] and its legal sufficiency." *Edenfield,* 609 So.2d at 29. "A defense is not a sufficient basis for granting a motion for summary judgment unless the evidence supporting that defense is so compelling as to establish that no issue of material fact actually exists." *Id.See also Burns v. Gadsden State Community College,* 908 F.2d 1512, 1519 (11th Cir.1990).

Here, Defendant contends that Plaintiff was fired because, in essence, his work demeanor and personality did not fit into the new corporate image that Defendant was attempting to achieve through its reorganization. In rebuttal, Plaintiff presents the deposition testimony of Dennis Chambers and Eva Patricia Wesley,[5] as well as the deposition testimony of O'Reilly covering Plaintiff's positive 1995 work performance review. Taking this testimony in the light most favorable to Plaintiff, and combined with the disputed issue of material fact as to whether O'Reilly believed Plaintiff to be a "squealer," the Court con-

---

4. The Court further finds that Plaintiff has failed to sufficiently establish the four factors outlined in *Fike v. Gold Kist, Inc.,* 514 F.Supp. 722 (N.D.Ala.), *aff'd,* 664 F.2d 295 (11th Cir.1981), to hold that Defendant and the Latin American companies should be treated as a single corporation.

5. Both Chambers and Wesley, co-workers of Plaintiff, stated that Plaintiff generally had a good working relationship with most people, that he was friendly and a team player.

cludes that Defendant has not met its burden on summary judgment of showing affirmative proof of the factual and legal sufficiency of its defense. Indeed, the Court finds that reasonable jurors could differ as to the motivation behind Plaintiff's termination. Accordingly, the Court denies Defendant's motion for summary judgment as to the Pericich incident.

### B. *The Breach of Contract Claim.*

Under Count III of his Third Amended Complaint, Plaintiff asserts that Defendant is liable for breach of contract in that it failed to pay Plaintiff a bonus that he allegedly earned in 1996. Plaintiff asserts that O'Reilly, in August 1996, told Plaintiff that he (Plaintiff) had earned a bonus for that year.[6] The only evidence presented in this regard other than Plaintiff's unsupported assertion, however, were letters indicating that the payment of a bonus was, at best, discretionary. Moreover, Defendant presented the uncontroverted testimony of Mr. Burnett, Defendant's Director of Human Resources, that bonuses were discretionary. No competent evidence has been presented that Plaintiff had, in fact, earned a bonus for 1996. As such, Plaintiff has failed to establish the pivotal element of his breach of contract claim—i.e., that there was a contract requiring the payment of a bonus. *See Dickinson v. Auto Center Manufacturing Co.*, 594 F.2d 523, 528 (5th Cir.1979) (holding that, to establish a claim for breach of contract in Florida, a claimant must show "the existence of a contract, a breach thereof and damages flowing from the breach."). Accordingly, the Court grants summary judgment in favor of Defendant on Plaintiff's breach of contract claim.[7]

### C. *The Defamation Claim.*

In Count IV of his Third Amended Complaint, Plaintiff asserts that nine allegedly defamatory statements were made about him by four different employees of the Defendant, and that these statements were overheard by eleven different witnesses. In addition to denying that the statements were ever made, Defendant asserts that the statements are either time-barred or are not actionable as a matter of law.

#### 1. *Statute of limitations.*

■ Actions for libel and slander brought under Florida law are limited by a two year statute of limitations. *See* Fla. Stat. § 95.11(4)(g). The two-year limitation period begins to run on the publication of the allegedly defamatory statement, not on the discovery of the statement by the plaintiff. *Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan*, 629 So.2d 113, 115 (Fla.1993). Hence, because Plaintiff in the case *sub judice* filed his original complaint on June 30, 1997, any allegedly defamatory statements published prior to June 30, 1995, would be time-barred.

In his Third Amended Complaint, Plaintiff alleges that Augusto Candido, a Hoechstdo–Brasil employee, made comments that Plaintiff could not be trusted and that he would try to get rid of Plaintiff. *See* Third Amended Complaint, ¶ 66. Assuming such comments amount to defamation for which Defendant could be held liable, Plaintiff concedes that most of the statements made in this regard occurred in 1994 and 1995. Thus, to the extent they occurred prior to June 30, 1995, such statements are time-barred.

---

**6.** In his opposition memorandum, Plaintiff asserts that he received a written document on August 6, 1996, stating he would get a bonus. This argument, however, is directly contrary to Plaintiff's deposition testimony, wherein Plaintiff conceded that he did not have any written document and that O'Reilly allegedly told him orally that Plaintiff would get a bonus.

**7.** Even assuming, *arguendo,* that Plaintiff had a contractual right to a bonus for 1996, the Court finds that, by his own admission, Plaintiff did not timely meet his obligations under that "contract" in order to earn the bonus— i.e., the closing of the Miami office and the return of the company car and computer.

Plaintiff next alleges that O'Reilly told Ann Frechette that he had to get rid of Plaintiff and that Plaintiff is a problem. *See* Third Amended Complaint, ¶ 67. Plaintiff concedes, however, that these comments were made prior to June 10, 1995. O'Reilly also called Plaintiff a "squealer" in April 1995. *See* Third Amended Complaint, ¶ 69. The Court finds that these comments are also clearly barred by the statute of limitations.

### 2. *Merits of the remaining statements.*

■ The Court now turns to the alleged defamatory comments that are not time-barred. To establish a prima facie case of defamation under Florida law, Plaintiff must show the following elements:

1. That Defendant published a false and defamatory statement of and concerning Plaintiff;

2. That such statement was communicated to a third party without reasonable care as to whether the statement was true or false; and

3. That Plaintiff suffered actual damages as a result of the publication.

*Miami Herald Publishing Co. v. Ane,* 423 So.2d 376, 388 (Fla. 3d DCA 1982), *app'd,* 458 So.2d 239 (1984).

■ In this case, Plaintiff has failed to present any evidence, other than his own deposition testimony, that the alleged defamatory statements were in fact made.[8] As to all of the alleged statements, however, Plaintiff concedes that he has no personal knowledge as to the statements—he only learned of the comments from others. Clearly, Plaintiff's deposition testimony constitutes double-hearsay and, as such, cannot be used to defeat summary judgment. *McMillian v. Johnson,* 88 F.3d 1573, 1583–85 (11th Cir.1996), *aff'd,* 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997). *See also Broadway v. City of Montgomery,* 530 F.2d 657, 661 (5th Cir. 1976) (holding that the statement of one

witness of what another person said they were told constitutes double hearsay).

In *Bush v. Barnett Bank,* 916 F.Supp. 1244, 1255 (M.D.Fla.1996), the plaintiff alleged that her employer published statements to its employees that the plaintiff had been fired for misuse of her checking account. In support of her claim, the plaintiff proffered the affidavit of one of Defendant's managers (Ms. Campbell) which stated that she (Ms. Campbell) was told by another manager (Mr. Connell) that "an announcement was made in his office to all the employees that Ms. Bush had been kiting checks and they had to let her go." *Id.* The court in *Bush* found that the plaintiff was attempting to introduce an otherwise admissible statement via two out-of-court declarations. Because the declarations were hearsay and did not fall under any hearsay exception, the court held that the declarations were inadmissible. *Id.* at 1256. The *Bush* court reasoned that,

> in this case, Campbell's testimony is offered to prove that Barnett in fact published a defamatory statement to third parties—a statement offered to prove the truth of the matter asserted. Plaintiff presented no affidavit or deposition from Connell; therefore, Campbell's quotation of Connell is pure hearsay. This Court finds that Campbell's allegation is a classic example of hearsay and will not be considered since it is incompetent evidence with respect to a crucial element of Plaintiff's burden of proof.

*Id.* Therefore, because the plaintiff had failed to prove that the defendant had published a false statement, the court granted summary judgment in the defendant's favor on the plaintiff's defamation claim. *Id.*

Similarly, in *Baker v. McDonald's Corp.,* 686 F.Supp. 1474, 1485 (S.D.Fla.1987), *aff'd,* 865 F.2d 1272 (1988), *cert. denied,*

---

8. Although Plaintiff did present the affidavit of Eleanor McMahon which stated that she "overheard" an allegedly defamatory statement made by O'Reilly to Ann Frechette, the statement allegedly heard is time-barred and, therefore, Ms. McMahon's affidavit is of no consequence.

493 U.S. 812, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989), the district court granted summary judgment on the plaintiff's defamation claim, finding that there was a "complete lack of proof as to any publication." In support of his defamation claim, plaintiff Baker had presented his own deposition testimony wherein he stated that a supervisor of the defendant told plaintiff's brother-in-law that plaintiff had been discharged for sexual harassment. *Id.* at n. 13. The court in *Baker* held that "this statement is hearsay. No affidavit by plaintiff's brother-in-law, or other admissible testimony, was filed by the plaintiff to show this." *Id.*

In the instant case, Plaintiff's attempt to avoid summary judgment suffers from the same defects found in *Bush* and *Baker.* Because Plaintiff has presented no competent evidence to meet the first element of his prima facie case, summary judgment in favor of Defendant on Count IV of the Third Amended Complaint is warranted.

### D. The Age Discrimination Claim.

■ Plaintiff's final contention is that he was terminated because of his age. Under the ADEA, it is unlawful for an employer to discharge any employee because of that employee's age. 29 U.S.C. § 623(a)(1). To establish a prima facie case of discriminatory discharge based on age, Plaintiff must show:

(1) That he is a member of the protected age group (i.e., over 40 years of age);

(2) That he was discharged;

(3) That, at the time of his discharge, he was performing his job at a level that met his employer's legitimate expectations; and

(4) That he was replaced by a person *substantially* younger.

*Turlington v. Atlanta Gas Light Co.,* 135 F.3d 1428, 1432 (11th Cir.), *cert. denied,* — U.S. ——, 119 S.Ct. 405, 142 L.Ed.2d 329 (1998) (emphasis added). *See also O'Connor v. Consolidated Coin Caters-*

*ers Corp.,* 517 U.S. 308, 310–11, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). To meet this burden, Plaintiff must present evidence "adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion...." *International Broth. of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). If the plaintiff fails to satisfy any one of the elements of his prima facie case, summary judgment is appropriate. *Turlington,* 135 F.3d at 1433. The plaintiff always "bears the ultimate burden of proving by a preponderance of the evidence that age was a determining factor in the employer's decision to dismiss him." *Zaben v. Air Products & Chemicals, Inc.,* 129 F.3d 1453, 1457 (11th Cir.1997).

■ In this case, the undisputed facts show that, at the time Plaintiff was informed that he would be terminated, he was 41 years of age.[9] The two decisionmakers with respect to Plaintiff's termination, Carl Amond and Brian O'Reilly, were 55 and 56, respectively. Plaintiff was replaced by Lindsey Deal, who was 39 years of age at the time. Given these undisputed facts, the Court finds that no inference of age discrimination arises. Indeed, in *O'Connor,* the Supreme court noted (albeit in dicta) that a three year age difference was insignificant for purposes of establishing a prima facie case of age discrimination. 517 U.S. at 312, 116 S.Ct. 1307. Similarly, in *Fussell v. Bellsouth Communications, Inc.,* 1998 WL 12229 1998 U.S.Dist. Lexis 251 (E.D.La. Jan. 8, 1998), the plaintiff brought a discriminatory discharge claim under the ADEA. The plaintiff alleged that her position was eliminated and her responsibilities were then divided "among other supervisors, some of whom were younger." *Id.* at 2. In granting summary judgment to the defendant, the court in *Fussell* held that there was no evidence that the plaintiff was terminated because of her age. *Id.* at 4. The court reasoned, inter alia, that of the five youn-

---

9. As of the effective date of his termination, Plaintiff was 42 years of age.

ger persons retained, four were within three years of the plaintiff's age and the fifth was over 40. *Id.* at 3.

■ Even if Plaintiff could establish a prima facie case of age discrimination, the Court finds that he cannot overcome Defendant's legitimate business reason for Plaintiff's discharge—that Plaintiff's workplace demeanor and personality did not meet the criteria of the new corporate image.[10] Indeed, the only evidence Plaintiff proffers in an attempt to establish pretext are two (2) innocuous statements made by management personnel.[11] Specifically, Plaintiff asserts that, while he was at a management conference in New Orleans in May 1995, Defendant's Vice President of Human Resources, Joe Wojcik, allegedly asked Plaintiff how old he (Plaintiff) was. Plaintiff further asserts that, at the beginning of 1996, during a performance review, Mr. O'Reilly made the comment to Plaintiff, in response to Plaintiff's request to take a safety course, that "maybe [Plaintiff] was too old for the job." The Court has presumed, for purposes of this decision, that the alleged statements were in fact made.

■ With respect to the comment by Mr. Wojcik, Plaintiff has presented no evidence that Mr. Wojcik was involved in the decision to terminate Plaintiff. As such, the comment has no bearing on Plaintiff's ADEA claim and is, therefore, insufficient as a matter of law to raise a question of material fact. *See Zaben,* 129 F.3d at 1458; *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1329–30 (11th Cir.1998). Furthermore, the Court finds that the

statement—having been made almost a year and a half prior to the employment action at issue—is far too attenuated to have any significant probative value. *See Clemons v. Hardee County Sch. Bd.,* 848 F.Supp. 1535, 1538 (M.D.Fla.1994) (requiring causal connection between circumstantial evidence and challenged employment decision). *See also Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (holding that, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted).

Although O'Reilly's alleged statement presents more of a temporal nexus than does Wojcik's statement, it nevertheless fails to raise any inference that age was a motivating factor in the decision to terminate Plaintiff. Given the context in which the single, isolated comment was made, the Court finds that no reasonable jury could conclude that O'Reilly intended to discharge Plaintiff—some six months later—because of Plaintiff's age. The comment is just "too indefinite to justify by itself an inference of discriminatory intent." *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 597 (11th Cir.1987). Even if the statement could conceivably provide Plaintiff a scintilla of circumstantial evidence as to discriminatory intent, a scintilla is insufficient to survive summary judgment. *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505. In other words, to avoid summary judgment, Plaintiff must "come forward with significant probative evidence of age discrimination." *Mendoza v. Borden, Inc.,* 158 F.3d 1171, 1174 (11th Cir.1998). Plaintiff has failed to meet his burden in this regard.

---

10. Unlike the Defendant's heavy burden on its defense to the whistle-blower claim, its burden on a discrimination claim is one of persuasion, not proof. Thus, Defendant need only proffer—not prove—a legitimate, nondiscriminatory reason for its conduct. The burden then shifts to the Plaintiff to show that the proffered reason is merely a pretext to mask illegal discrimination. *See, e.g., Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

11. Defendant argues that these comments do not constitute direct evidence of age discrimination. Plaintiff, however, has proffered the statements merely as evidence of pretext. Nevertheless, even if Plaintiff had asserted that such statements constitute direct evidence, the law is well established that "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, ... constitute direct evidence of discrimination." *Turlington,* 135 F.3d at 1433. The Court finds that the two statements at issue do not rise to this level.

■ Finally, the fact that both decision-makers were themselves in the protected age group and were substantially older than Plaintiff adds to the Court's conclusion that a reasonable jury could not find that Defendant's conduct was motivated by unlawful discrimination. *See Waldemar v. American Cancer Soc.*, 971 F.Supp. 547, 556 (N.D.Ga.1996) (citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir.1991) (noting that decision-makers within the protected class "are more likely to be the victims of age discrimination than its perpetrators.")). Hence, the Court finds that summary judgment in favor of Defendant as to Count V of Plaintiff's Third Amended Complaint is warranted.[12]

### CONCLUSION

Based upon the foregoing analysis, it is hereby

ORDERED that Defendant's Motion for Summary Judgment [D.E. No. 128] is GRANTED IN PART AND DENIED IN PART as to Count I of the Third Amended Complaint. This case shall proceed to trial solely on the issue of whether Plaintiff was terminated or otherwise retaliated against by Defendant in violation of the Florida Whistle-blower's Act for his involvement in the Pericich incident. It is further

ORDERED that Defendant's Motion for Summary Judgment is GRANTED as to Counts III, IV, and V of the Third Amended Complaint.

---

**12.** Plaintiff also appears to be asserting that he was terminated and replaced by Deal because Deal's salary was approximately $10,000.00 less than that made by Plaintiff. The ADEA, however, prohibits discrimination on the basis of age; it does not prohibit discharge on the basis of salary or seniority. *See Broaddus v. Florida Power Corp.*, 145 F.3d 1283, 1287 (11th Cir.1998). Indeed, decisions which are based on reasons independent of age but which may correlate with age are not actionable under the ADEA. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993); *E.E.O.C. v. Francis W. Parker Sch.*, 41 F.3d 1073, 1077 (7th Cir.1994), *cert. denied*, 515 U.S. 1142, 115 S.Ct. 2577, 132 L.Ed.2d 828 (1995).